Docket No. 22HF-165423 – Class 14

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

| | |
|---|---|
| Summit Entertainment, LLC, | |
| Appellant, | |
| v. | **NOTICE OF APPEAL** |
| United States Patent and Trademark Office, Trademark Trial and Appeal Board, | |
| Appellee. | |

Appellant Summit Entertainment, LLC ("Appellant") hereby gives notice of its appeal of the Order of the Trademark Trial and Appeal Board refusing registration of ECLIPSE in Class 14, Serial No. 77/921,986, entered on April 11, 2016 (the "Order"). Appellant received the Order on April 11, 2016, which is also the mailing date. A copy of the Order is attached hereto.

Respectfully submitted,

Dated: June 9, 2016

Jill M. Pietrini
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
(310) 228-3700

Attorneys for Applicant Summit
Entertainment, LLC

## CERTIFICATE OF MAILING

      I hereby certify that the foregoing Notice of Appeal has been served upon the Trademark Trial and Appeal Board by depositing a copy thereof in an envelope addressed to: U.S. Patent and Trademark Office, P.O. Box 1451, Alexandria, VA 22313-1451, with a duplicate copy served upon the Office of the General Counsel, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450, on this 9th day of June, 2016. A copy of the foregoing Notice of Appeal has also been filed with the United States Court of Appeals for the Federal Circuit.

LaTrina A. Martin

SMRH:477988388.1

> **This Opinion is Not a
> Precedent of the TTAB**

Hearing: February 10, 2016                    Mailed: April 11, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Summit Entertainment, LLC*

———

Serial No. 77921986

———

Jill M. Pietrini and Paul Bost of Sheppard Mullin Richter & Hampton LLP,
    for Summit Entertainment, LLC.

Deborah Meiners, Trademark Examining Attorney, Law Office 110,
    Chris A. F. Pedersen, Managing Attorney.

———

Before Kuhlke, Taylor and Goodman,
    Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

    Summit Entertainment, LLC ("Applicant") seeks registration on the Principal

Register of the mark ECLIPSE (in standard characters) for goods ultimately

identified as:

> Brass wrist cuff bracelets, clocks, dog tags for wear by
> humans for decorative purposes, jewelry, jewelry boxes,
> jewelry boxes of metal, lapel pins, medals, rings, rubber
> bracelets, silver wrist cuff bracelets, sun dials, watch
> bands, watch bracelets, and watches, all marketed in
> connection with motion pictures featuring vampires,

werewolves, other supernatural creatures and romance, in International Class 14.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark, when used in connection with the identified goods, so resembles the registered mark ECLIPSE (in typed form)[2] for "watches," in International Class 14, as to be likely to cause confusion, mistake or deception.

When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, Applicant requested remand for consideration of an amendment to the identification of goods. The Board granted the request and the Examining Attorney accepted a subsequent amendment to the identification of goods but maintained the refusal under Section 2(d). Applicant and the Examining Attorney filed briefs. We affirm the refusal to register.

## Likelihood of Confusion

When the question is likelihood of confusion, we analyze the facts as they relate to the relevant factors set out in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co., Inc.*, 315 F.3d

---

[1] Application Serial No. 77921986 was filed on January 28, 2010, under Section 1(b) of the Trademark Act, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce.

[2] Registration No. 1505784, issued on September 27, 1988, renewed. Prior to November 2, 2003, "standard character" drawings were known as "typed" drawings. A typed mark is the legal equivalent of a standard character mark. TMEP § 807.03(i) (October 2015).

1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). These factors and others are discussed below. *See M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 78 USPQ2d 1944 (Fed. Cir. 2006) (even within the *du Pont* list, only factors that are "relevant and of record" need be considered).

Applicant is the producer and distributor behind the Twilight movies and ECLIPSE refers to the third film in the Twilight movie franchise. App. Br. 24, TTABVUE 5, 6.[3] Applicant has obtained several registrations for the mark ECLIPSE for various goods (cosmetics, action figures, cloth bags, pillows and bandages for skin wounds) and for "licensing of merchandise associated with motion pictures."[4] It is, of course, common practice for companies to use the title of a film on various merchandising goods. *L.C. Licensing Inc. v. Berman*, 86 USPQ2d 1883, 1889 (TTAB 2008) (the licensing of commercial trademarks on "collateral products" has become a part of everyday life). The USPTO routinely registers such marks even if the use is ornamental because it serves as collateral use or secondary source. *In re Paramount Pictures Corp.*, 213 USPQ 1111, 1112 (TTAB 1982) (MORK & MINDY registrable for decals and primary significance was to indicate television series). *See also* TMEP § 1202.03(c) (October 2015).

---

[3] Citations to TTABVUE refer to the docket history system for the Trademark Trial and Appeal Board by entry and page number.

[4] September 16, 2013 Response, pp. 114-121.

In making our determination, we first consider two issues highlighted by Applicant: (1) what effect, if any, does the addition of the wording "all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance" to Applicant's identification of goods have on the likelihood of confusion equation in this case; and (2) how narrow is the scope of protection for the ECLIPSE mark for watch and jewelry goods in Class 14.

*Effect of Wording* "*all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance*"

Applicant argues that:

> [Its goods are] marketed through mass market retailers and other affordable channels of commerce [and] [g]oods marketed under Applicant's ECLIPSE mark are often sold using imagery from the Twilight Motion Pictures in order to further distinguish those goods in the marketplace. … Applicant's identification of goods expressly contains a restriction, namely, they are all [sic] "all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance."

App. Br., 24 TTABVUE 21 (emphasis in original).

While this may serve to restrict Applicant to selling only products that are marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance, the Registrant's identification has no restriction and we must consider all *ordinary* channels of trade for the respective goods, not the Registrant's *actual* channels of trade. The question would be, do the ordinary channels of trade for watches include goods marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance? If they do, then Applicant's "restriction" does not obviate the refusal.

Applicant has stated that its channels of trade are "mass market retailers and other affordable channels of commerce." *Id*. These channels are certainly included in the ordinary trade channels for watches. Applicant intends to license its mark ECLIPSE for use on various goods, which could include watches. Registrant is the type of company that could obtain a license for such a mark for use on its watches. While Applicant's marketing language in the identification restricts its marketing environment, it encroaches on Registrant's broad identification "watches" that presumptively includes marketing in connection with a movie on any theme. Thus, "we do not see the language as imposing a meaningful limitation on Applicant's goods in any fashion, most especially with respect to either trade channels or class of purchasers." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1410 (TTAB 2015).

Applicant argues that the goods are "often sold using imagery from the Twilight Motion Pictures." However, the phrase "all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance" does not require a limitation to a specific movie and the argument recognizes the option of marketing without such imagery by using the word "often." Conversely, Registrant's registration does not exclude use in relation to a movie, and, as such, the meaning and commercial impressions of the cited identical mark could include such context.[5]

---

[5] We note that Applicant stresses the renown of its mark in connection with a movie. To the extent this has an impact in the determination, it would serve to increase likelihood of confusion by making it more likely that purchasers will remember the famous mark and think of it when encountering similar goods sold under a similar mark. Such likelihood of confusion is only a reason to refuse a new registration, not grant one. To the extent that the mark is well known, such fact supports refusal of Applicant's application, "because when

Moreover, the marketing language in Applicant's identification of goods does not avoid reverse confusion where Registrant's identification is not limited by channels of trade or classes of purchasers. If the marks are identical and the goods, as identified, are identical or closely related and are a type of good that could be sold in relation to a motion picture, we must consider the nature of the goods to be the same. The statute still "protects the registrant and senior user from adverse commercial impact due to use of a similar mark by a newcomer." *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). As the Federal Circuit stated:

> The term "reverse confusion" has been used to describe the situation where a significantly larger or prominent newcomer "saturates the market" with a trademark that is confusingly similar to that of a smaller, senior registrant for related goods or services. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 & n.12, 24 USPQ2d 1001, 1010 & n.12 (7th Cir. 1992), cert. denied, 61 U.S.L.W. 3621 (U.S. Apr. 19, 1993) (No. 92-1400). The junior user does not seek to benefit from the goodwill of the senior user; however, the senior user may experience diminution or even loss of its mark's identity and goodwill due to extensive use of a confusingly similar mark by the junior user. *Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 490, 6 USPQ2d 1187, 1191 (2d Cir. 1988); *Ameritech, Inc. v. American Information Technologies*

---

confusion is likely, it is the prior Registrant that must prevail. Even if it eclipses the renown of the prior Registrant, Applicant's fame does not entitle it to usurp the cited Registrant's rights in the mark." *In re i.am.symbolic*, 116 USPQ2d at 1413 n.7.

Further as explained in *In re i.am.symbolic*, "[t]he purported lack of fame of Registrant's mark, as argued by Applicant, is of little consequence. See TMEP § 1207.01(d)(ix). Because of the nature of the evidence required to establish the fame of a registered mark, the Board normally does not expect the Examining Attorney to submit evidence as to the fame of the cited mark in an *ex parte* proceeding. *See In re Thomas*, 79 USPQ2d 1021, 1027 n.11 (TTAB 2006). And, in an *ex parte* analysis of the *du Pont* factors for determining likelihood of confusion, the 'fame of the mark' factor is normally treated as neutral when no evidence as to fame has been provided. *See id.*; *see also In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1204 (TTAB 2009) (noting that the absence of evidence as to the fame of the registered mark "is not particularly significant in the context of an ex parte proceeding")." *Id.* at 1413.

Serial No. 77921986

> *Corp.*, 811 F.2d 960, 966, 1 USPQ2d 1861, 1866 (6th Cir. 1987).
>
> The avoidance of confusion between users of disparate size is not a new concept; however, the weighing of the relevant factors must take into account the confusion that may flow from extensive promotion of a similar or identical mark by a junior user. *See DeCosta v. Viacom International Inc.*, 981 F.2d 602, 607-10, 25 USPQ2d 1187, 1191-93 (1st Cir. 1992).

Thus, because of the presumptions we must accord the cited registration, the unilateral marketing restrictions "essentially [are] a distinction without a difference for purposes of our likelihood of confusion analysis." *In re i.am.symbolic, llc*, 116 USPQ2d at 1410.

Applicant also points to what it is (movie producer) and what the Registrant is (watch company) and how these respective companies actually engage in commerce. These arguments are more directed to an infringement claim drawing upon real world use of the marks, but our inquiry is confined to the register. It is possible to have the register reflect more accurately the real world facts on the ground as Applicant seeks to do with its addition of the wording "all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance"; however to achieve the full picture, in particular where there are no differences in the marks, Applicant would have to seek to restrict the cited registration to their respective trade channels through a petition for partial cancellation.[6]

*Strength/Weakness of the ECLIPSE Marks*

---

[6] *See* Section 18 of the Trademark Act, 15 U.S.C. § 1068. *See also* TBMP § 309.03(d) (2015) and cases cited therein.

Serial No. 77921986

Applicant argues that the term ECLIPSE is widely used as a mark for various goods, including in International Class 14. While Applicant submitted over 300 registrations, only two third-party registrations are in Class 14:

> LUV ECLIPSE LOVE LIVES HERE for diamond jewelry; jewelry (Reg. No. 4148915);[7] and

> MIDNIGHT ECLIPSE for diamond jewelry; gemstone jewelry; jewelry (Reg. No. 4028807).[8]

In *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 115 USPQ2d 1671 (Fed. Cir. 2015) the Court found third-party registrations "in the food service industry" which included goods (various food items) and services (restaurants, cafes, bars) to be relevant to the question of weakness of a mark for restaurant services. In *Jack Wolfskin Ausrüstung Für Draussen GmbH & Co. KGAA v. New Millennium Sports*, S.L.U., 797 F.3d 1363, 116 USPQ2d 1129 (Fed. Cir. 2015), the Court found relevant third-party registrations for the same or similar goods all in the same field of clothing.

Applicant submitted a multitude of third-party registrations with the word ECLIPSE in the marks, but they are almost entirely from very different industries, for example, SOLAR ECLIPSE for cross-view mirrors for buses and ECLIPSE for alternative dispute resolution.[9] Such third-party registrations are far beyond the field of watches and jewelry and, as such, are not relevant to the determination of whether the word ECLIPSE is weak for watches or jewelry. There are a few third-party

---

[7] April 17, 2014 Response, p. 61.

[8] *Id*. at 106.

[9] April 17, 2014 Response pp. 146, 178.

registrations for personal items in different fields, but we find that they also are not

relevant to the question of weakness in the field of watches and jewelry:

> ECLIPSE and design for lipsticks, lip gloss, liner and pencils, eyeliner, mascara, eye shadows, powder, blushes, foundation (Reg. No. 3497022);[10]
>
> PLANETECLIPSE for clothing, namely, shirts, sweatshirts, sweaters, t-shirts, tops, shorts, underwear, socks, pants, belts, vests, parkas, coats, hats, footwear, gloves and jackets (Reg. No. 2802365);[11]
>
> EDGE ECLIPSE for shaving gel (Reg. No. 3715214);[12]
>
> ECLIPSE for body shimmer powder, cosmetics, fragrances, nail polish, bath gel, body lotion, shower gel, and skin moisturizer (Reg. No. 4372815);[13]
>
> SUMMER ECLIPSE for cosmetics, namely, powder for the face and body (Reg. No. 2721774);[14]
>
> BODY ECLIPSE and design for shampoos, after shaves, tanning lotions, hair and skin oils (Reg. No. 2912504);[15]
>
> ECLIPSE for razors, nail clippers, tweezers, nail files, eyelash curlers, and manicure and pedicure sets (Reg. No. 2520430);[16] and
>
> SOLAR ECLIPSE for sunglasses (Reg. No. 2109357).[17]

---

[10] April 17, 2014 p. 147.

[11] *Id*. at 156.

[12] *Id*. at 125.

[13] *Id*. at 237 (Applicant's registration).

[14] *Id*. at 329.

[15] *Id*. at 334.

[16] *Id*. at 370.

[17] *Id*. at 403.

Even if we consider them to have some relevance based on an overly generous reading of *Juice Generation, Inc. v. GS Enterprises LLC*, 115 USPQ2d at 1671 and *Jack Wolfskin Ausrüstung Für Draussen GmbH & Co. KGAA v. New Millennium Sports*, S.L.U., 116 USPQ2d at 1129, they do not narrow the protection to such an extent that an identical mark can register over a registration for identical and closely related goods.

*Similarity/Dissimilarity of the Marks*

We consider the marks and compare them "in their entireties as to appearance, sound, connotation and commercial impression." *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En* 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *du Pont*, 177 USPQ at 567). The marks "'must be considered … in light of the fallibility of memory ….'" *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (quoting *San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*, 565 F.2d 683, 196 USPQ 1 (CCPA 1977)). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Indus., Inc. v. Oliver & Winston, Inc.*, 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975). "[S]imilarity is not a binary factor but is a matter of degree." *In re St. Helena Hosp.*, 113 USPQ2d at 1085 (quoting *In re Coors Brewing Co.*, 343 F.3d 1340, 68 USPQ2d 1059 (Fed. Cir. 2003)).

Applicant's ECLIPSE mark is identical to Registrant's ECLIPSE mark.

As noted above, the connotation of the mark ECLIPSE is the same in connection with Applicant's watches, clocks and jewelry items as it is for Registrant's watches in that consumers familiar with Applicant's movie could obtain the same connotation from Registrant's mark. For those consumers not familiar with the movie, the marks would engender the same meaning, *i.e.*, "the partial or total obscuring of one celestial body by another, esp. of the sun when the moon comes between it and the earth (called solar eclipse), of the moon when the earth's shadow is cast upon it (called lunar eclipse)."[18]

*Similarity of the Goods / Channels of Trade / Consumers*

With regard to the goods, channels of trade and classes of consumers, we must make our determinations under these factors based on the goods as they are identified in the application and registration. *See In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997). *See also Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002); and *Octocom Sys., Inc. v. Houston Computers Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). When marks are identical the relationship between the goods of the respective parties need not be as close to support a finding of likelihood of confusion as might apply where differences exist

---

[18] COLLINS AMERICAN ENGLISH DICTIONARY (www.collinsdictionary.com retrieved 2013), March 12, 2013 Office action p. 1.

Serial No. 77921986

between the marks. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992), cert. denied 506 US 1034 (1992).

Applicant's "watches … all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance" are legally identical to Registrant's "watches" because they encompass all types of watches in all ordinary channels of trade including marketing in connection with movies of any theme. Applicant argues there is no evidence of record to support this finding; however this finding is based on a legal presumption that does not allow the Board to unilaterally curtail a Registrant's rights. Applicant's watch bands and watch bracelets are complementary items and highly related to watches. Applicant's clocks are also related to watches in that they perform an overlapping purpose.

Turning to the various jewelry items (and clocks), the record, comprising use-based third-party registrations and third-party websites, establishes that watches, clocks and jewelry items are frequently offered under the same mark in the same trade channels. *See, e.g.*, Reg. No. 4084521 for a design mark for, *inter alia*, jewelry boxes, jewelry and watches (Applicant's registration); Reg. No. 4064203 for the mark VORTEX for, *inter alia*, clocks, jewelry and watches; Reg. No. 4078964 for the mark IRONMAN for, *inter alia*, jewelry, watches, clocks; Reg. No. 4081355 for the mark AGNES-NICOLE AN for, *inter alia*, jewelry, jewelry boxes and cases, watches, clocks; Reg. No. 4082841 for the mark V VOLTA for, *inter alia*, jewelry, clocks and watches; Reg. No. 4079748 for the mark ROLF BLEU for, *inter alia*, watches, clocks, jewelry; Reg. No. 4074085 for the mark MARVEL for, *inter alia*, clocks, watches, jewelry; Reg.

No. 4084092 for the mark P&G PEACE GRACE for, *inter alia*, clocks, watches, jewelry, jewelry boxes; Reg. No. 3746276 for the mark CCCC CITOLE for, *inter alia*, alarm clocks, watch band, watch buckles, jewelry, jewelry boxes, jewelry watches, pocket watches, watch bands and straps.[19] *In re Infinity Broad. Corp.,* 60 USPQ2d 1214, 1217-18 (TTAB 2001) (third-party registrations may serve to suggest that the listed goods and/or services are of a type which may emanate from a single source)*; In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783 (TTAB 1993).

*See also* third-party websites showing watches and jewelry sold at the same online retail store (David Yurman, Tiffany[20] Swarovski[21]) on the same web page (Stauer[22]) or in varying price ranges, even character-themed (Noble Collection, Lego, The Hobbit Shop, Marvel[23]). *In re G.B.I. Tile & Stone, Inc.*, 92 USPQ2d 1366, 1371 (TTAB 2009) (website evidence probative on the question of relatedness of goods and services); *In re Paper Doll Promotions, Inc.*, 84 USPQ2d 1660, 1668 (TTAB 2007). The record also includes a jeweler that sells character-themed watches, and high end watches and jewelry (Reeds Jewelers[24]) and a shop offering a mickey mouse-themed Chopard watch retailing at $30,723 (The Watchery[25]).

---

[19] January 11, 2012 Office action, pp. 26, 28, 31, 33, 36, 39, 42, 45, 50-51.

[20] January 11, 2012 Office action, pp. 3-13, 20-23.

[21] July 10, 2015 Office action, pp. 58-60.

[22] March 12, 2013 Office action, pp. 12.

[23] July 10, 2015 Office action pp. 26, 28, 39, 41.

[24] July 10, 2015 Office action pp. 47-54.

[25] July 10, 2015 Office action p. 64.

Serial No. 77921986

Based on this evidence we find Applicant's various types of jewelry items to be closely related to watches. Applicant argues the mark ECLIPSE is weak in this field. This record reveals only two relevant third-party registrations for jewelry which issued over Registrant's ECLIPSE mark for watches. The marks in these two registrations are respectively LUV ECLIPSE LOVE LIVES HERE and MIDNIGHT ECLIPSE. Two registrations with additional matter in the marks to distinguish them is not sufficient to find the scope of protection for Registrant's mark does not reach closely related goods, such as jewelry items, for an identical mark.

As to the channels of trade and classes of consumers, as noted above, we must presume that Registrant's "watches" are marketed in all normal trade channels for such goods and offered to all normal classes of purchasers for such goods. *See In re Anderson*, 101 USPQ2d 1912, 1920 (TTAB 2012); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992); *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981). *See also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012). This would include Applicant's "mass market retailers" channels of trade. In addition, as noted above, Applicant's limitation to goods which are "all marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance" encroaches on Registrant's broad identification which presumptively encompasses such marketing. Under such circumstances, we must presume the goods travel in the same channels of trade and are offered to the same classes of consumers. *In re Viterra Inc.*, 101 USPQ2d at 1908.

Moreover, as discussed above, there is nothing in the record to dissuade us that such a limitation in Applicant's identification could prevent reverse confusion. Because of the presumptions accorded the cited registration we must consider Registrant's watches sold in the same mass retailer channel of trade under the identical mark ECLIPSE; even without being "marketed in connection with motion pictures featuring vampires, werewolves, other supernatural creatures and romance" or placed in another aisle, confusion would still be likely. In this regard, we note that the Examining Attorney has submitted evidence showing that low-priced watches marketed in conjunction with comic book and motion picture characters "are sold in close proximity and at the same department store as more expensive and better quality watches."[26] *See, e.g.*, Kohls[27] Disney[28] and Belk.[29] She also provided evidence showing watches sold in connection with a movie priced at almost $60, and cuffs, dog tags, watches and character-themed watches "sold at the same specialty retail store."[30]

Thus, based on the identifications themselves and the evidence of record, we find that Applicant's goods and the Registrant's goods, as identified in the respective application and registration, can emanate from the same source and be offered

---

[26] July 10, 2015 Office action.

[27] October 15, 2013 Office action pp. 7-13.

[28] October 15, 2013 Office action pp. 14-23.

[29] October 15, 2013 Office action pp. 24-29.

[30] July 10, 2015 Office action.

Serial No. 77921986

through the same channels of trade to the same classes of customers. In view thereof, these *du Pont* factors favor a finding of likelihood of confusion.

*Sophistication of Purchasers*

Applicant argues that the potential purchasers of the Registrant's goods would exercise a high degree of care and this factor should weigh in Applicant's favor. Applicant relies on the unpublished case *Swatch Group (U.S.) Inc. v. Movado Corp.*, 2003 WL 1872656 (S.D.N.Y. Apr. 9, 2003) (VENTURE not confusingly similar to VENTURA for watches). This case involved, *inter alia*, an infringement claim and the court looked to how the mark is used and narrowed the type of watch to those costing "hundreds of dollars." *Id*. Unlike an infringement action looking at the parties' actual respective uses, our inquiry is bounded by the registration and application and there are no such limitations. *In re Total Quality Group Inc.*, 51 USPQ2d 1474, 1476 (TTAB 1999). *Accord, Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987). Indeed, the record reveals watches are subject to a wide price range from approximately $20 to $70,000, and we must consider this factor in the context of the lowest priced watches.

In our analysis, we must consider all potential customers, including the less sophisticated. *In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 765 (TTAB 1986) (average ordinary wine consumer must be looked at in considering source confusion). There is nothing in the record that purchasers of the applied-for goods in retail stores exercise more than the usual care taken in purchasing such items. However, even if we were to assume that purchasers of Registrant's watches are discriminating, it is

settled that even sophisticated purchasers are not immune from source confusion, especially in cases such as the present one involving identical marks and legally identical and closely related goods. *See In re Research Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citing *Carlisle Chemical Works, Inc. v. Hardman & Holden Ltd.*, 434 F.2d 1403, 168 USPQ 110, 112 (CCPA 1970) ("Human memories even of discriminating purchasers … are not infallible.")). *See also In re Shell Oil Co.*, 26 USPQ2d at 1690; *In re Decombe*, 9 USPQ2d 1812 (TTAB 1988). The identity of the marks and the relatedness of the goods sold thereunder outweigh any presumed sophisticated purchasing decision. *See HRL Associates, Inc. v. Weiss Associates, Inc.*, 12 USPQ2d 1819 (TTAB 1989), aff'd, 902 F.2d 1546, 14 USPQ2d 1840 (Fed. Cir. 1990) (similarities of goods and marks outweigh sophisticated purchasers, careful purchasing decision, and expensive goods). *See also Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162-63 (Fed. Cir. 2014).

## Conclusion

In conclusion, because the marks are identical, the goods are legally identical and otherwise closely related, and the channels of trade and consumers overlap, we find that confusion is likely between Applicant's mark ECLIPSE and the mark ECLIPSE in the cited registration.

**Decision**: The refusal to register Applicant's mark is affirmed.